| | | |
|---|---|---|
| **WHITEAMIRE CLINIC, P.A. INC.,** | ) | **CASE NO.1:16CV226** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **CARTRIDGE WORLD NORTH** | ) | **OPINION AND ORDER** |
| **AMERICA, LLC., AND JOHN DOES** | ) | |
| **1-10** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Whiteamire Clinic, P.A.'s Motion for

Summary Judgement on it's Individual Claim (ECF # 60) and Defendant Cartridge World North

America, LLC.'s Motion for Summary Judgment (ECF # 65). For the following reasons, the

Court denies both Motions.

Plaintiff's First Amended Complaint ("FAC") alleges a single claim for violation of the

Telephone Consumer Protection Act of 2005, 47 U.S.C. § 227 ("TCPA"), on behalf of itself and

a putative class. According to Plaintiff, on July 3, 2012, Defendant transmitted via facsimile

machine an unsolicited facsimile advertisement to Plaintiff. Plaintiff did not give Defendant

consent to send the fax.

The TCPA as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227

prohibits the use of any "telephone facsimile machine, computer, or other device to send, to a

telephone facsimile machine, an unsolicited advertisement..." 47 U.S.C. § 227(b)(1)(C). "The

JFPA provides a private right of action and provides statutory damages of $500 per violation."

(FAC pg 1). Although the FAC alleges Plaintiff received only one unsolicited fax, its Motion for Summary Judgment asserts Defendant sent Plaintiff two unsolicited faxes on July 3 and July 12, 2012, respectively. Plaintiff argues the faxes were unsolicited and failed to contain the statutorily required opt-out notice. Although Plaintiff concedes the parties had an existing business relationship, the lack of consent and failure to include opt-out language in the faxes entitles him to the statutory remedies.

Defendant alleges it did not violate the JFPA because Plaintiff consented to the receipt of the advertisements via fax and because the parties had a long standing business relationship wherein Plaintiff made monthly purchases of ink from Defendant. Furthermore, as a result of a recent court decision, faxes that have been consented to no longer are required to contain the opt-out notices. Lastly, Defendants contend Plaintiff cannot show standing as it has failed to offer any evidence of injury.

## LAW AND ANALYSIS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that no genuine issue of material fact exists, which may be demonstrated by "portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Inferences drawn "from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not have the duty to search the entire record to establish that no genuine dispute as to any material fact exists. *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479 (1989). The non-moving party must present affirmative

evidence supporting a genuine dispute of fact in order to defeat a motion for summary judgment.

*Id.* at 1479. If the non-moving party fails to establish the existence of an essential element of

which it has the burden of proof at trial, the moving party is entitled to judgment as a matter of

law. *Celotex*, 477 U.S. at 322-23. "[T]he inquiry is whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

### *Did Plaintiff consent to receipt of the fax*

The JFPA, 47 U.S.C. § 227 prohibits the use of "any telephone facsimile machine,
computer, or other device to send, to a telephone facsimile machine, an unsolicited
advertisement, unless"--
> (i) the unsolicited advertisement is from a sender with an established business
> relationship with the recipient;
> (ii) the sender obtained the number of the telephone facsimile machine through--
>> (I) the voluntary communication of such number, within the
>> context of such established business relationship, from the
>> recipient of the unsolicited advertisement, or
>> (II) a directory, advertisement, or site on the Internet to which the
>> recipient voluntarily agreed to make available its facsimile number
>> for public distribution,
> (iii) the unsolicited advertisement contains a notice meeting the requirements under
> paragraph (2)(D),

47 U.S.C.A. § 227(b)(1)(C) (West).

The JFPA further "provides for a private right of action, permitting plaintiffs to seek (1)

to enjoin a violation of the Act; (2) to recover for actual monetary loss from such a violation or

to receive $500, whichever is greater; or (3) both (1) and (2)." *Imhoff Inv., L.L.C. v. Alfoccino,*

*Inc.,* 792 F.3d 627, 631 (6th Cir. 2015) citing 47 U.S.C. § 227(b)(3). "A fax is 'unsolicited' if it

is sent to persons who have not given their 'prior express invitation or permission' to receive it."

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.,* 863 F.3d 460, 463 (6th Cir.

2017), as corrected on denial of reh'g en banc (Sept. 1, 2017) quoting § 227(a)(5). "The statute carves out a narrow exception to this general ban by permitting the sending of unsolicited faxes if a sender can show three things: (1) the sender and recipient have 'an established business relationship'; (2) the recipient voluntarily made his fax number available either to the sender directly or via 'a directory, advertisement, or site on the Internet'; and (3) the fax contained an opt-out notice meeting detailed statutory requirements." *Id.* quoting § 227(b)(1)(C)(i)-(iii). "The upshot of this exception is that if an unsolicited fax does not contain a properly worded opt-out notice, the sender will be liable under the statute, regardless of whether the other two criteria are met." *Id.*

The parties do not dispute that the faxes received by Plaintiff from Defendant were indeed advertisements, however, the parties dispute whether Plaintiff consented to the receipt of faxes from Defendant. It is Defendant's burden to show Plaintiff consented to receipt of the fax or gave its fax number willingly in order to receive the fax. See *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at *19 (W.D. Ky. June 30, 2014) quoting *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005,* 71 FR 25967, at 25972 :

> Commenters that discussed this issue agree that a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission. Senders who choose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified. In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given. The Commission strongly suggests that senders take steps to promptly document that they received such permission. (An example of such documentation could be the recording of the oral authorization. Other methods might include established business practices or contact forms used by the sender's personnel.) Express permission need only be secured once from the consumer in order to send facsimile advertisements to that recipient until the consumer revokes such permission by sending an opt-out

request to the sender.

According to the deposition testimony of Rusty V. Whiteamire, he did not give permission to Defendant to send him faxes.  (Whiteamire Depo. Pg 83).  Defendant's evidence is more circumstantial but still presents issues of fact whether express permission was given Plaintiff by Defendant.  According to Defendant, in 2012 it implemented a marketing plan to send electronic advertisements to potential customers using data obtained from USAData, Inc. The data included business names, addresses, phone numbers, SIC codes (codes used to identify particular industries) and descriptions of each business along with contact names and titles. Defendant then hired a third party call center, Timlin, Industries, Inc., to call the businesses and obtain consent to send emails.  Defendant developed a script for Timlin to use that requested consent to receive email advertisements.  The USAData, Inc. data received by Defendant for Plaintiff did not include an email or fax number.  During the course of the call campaign Timlin discovered many contacts did not want the ads sent to their email but preferred to receive them by fax.  Timlin uses inmates of correctional facilities as telemarketers.   They called the numbers of businesses provided Defendant by USAData and followed a script prepared by Defendant. (Kloos depo.pgs 10-18).  The script used by Timlin telemarketers reads as follows:

"Hi, I'm _____, and I'm calling from your local Cartridge World store.

How are you today?

Great. I'm calling because we have a special offer for businesses to save money

on ink and toner AND get a free printer–and we want to send it to the right

person.

Use A or B

**A:**

Our records show: (First, Last name) is the (title). Is that right?

And his/her email address is … (obtain information).

Perfect, that's all we need. We'll send information about saving money with

Cartridge World ink and toner–and the Free Printer Program! Thanks for your

time.

**B:**

What's the name of the person who buys your *office supplies*?

Their title?

And email address?

Perfect, that's all we need. We'll send information about saving money with

Cartridge World ink and toner–and the Free Printer Program! Thanks for your

time."

(Callaway dec. ¶ 2).

According to Defendant, the inmate telemarketers had no access to the internet, therefore, the only way they could have obtained the fax number of Plaintiff was by the consent of the Plaintiff given telephonically after receiving the phone call from Timlin on behalf of Defendant. (Statement of Facts ¶ 17).   Given the evidence both for and against consent, the Court finds there exists a genuine issue of fact whether consent was given.  Therefore, summary judgment is denied both parties on this issue.

### *Was there an existing business relationship between Plaintiff and Defendant.*

While the JFPA bars unsolicited faxes, it provides an exception.  The Sixth Circuit

recently stated that the JFPA "carves out a narrow exception to this general ban by permitting the sending of unsolicited faxes if a sender can show three things: (1) the sender and recipient have "an established business relationship"; (2) the recipient voluntarily made his fax number available either to the sender directly or via "a directory, advertisement, or site on the Internet"; and (3) the fax contained an opt-out notice meeting detailed statutory requirements." *Sandusky Wellness Ctr., LLC*, 863 F.3d at 463. Plaintiff readily acknowledges it had an existing business relationship with Defendant. Plaintiff "does not dispute it has an 'established business relationship' with Cartridge World within the meaning of the JFPA." (Plaintiff Motion for Summary Judgment pg. 7). However, Defendant offers unrebutted evidence that Plaintiff published its fax number on its website. (Whiteamire depo pg 86-87). Thus, Defendant can meet two of the three requirements for the established business relationship defense.

## Whether the Fax provided the requisite opt-out notice requirements

47 U.S.C. § 227(b)(1)(C) requires all unsolicited faxes contain opt-out notices with the following requirements:

**i)** the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

**(ii)** the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

**(iii)** the notice sets forth the requirements for a request under subparagraph (E);

There is no dispute that Defendant's faxes to Plaintiff did not contain the statutorily required opt-out notices. Defendant argues its faxes allowed for the recipient to click a link to "Regard Fax as Junk." However, this does not meet the express notice requirements of the

JFPA.  Thus, any unsolicited faxes sent by Defendant to Plaintiff were not in compliance with the JFPA and Defendant is not excepted from liability under the established business relationship defense.  However, the Sixth Circuit has recently held that solicited or consented to faxes are NOT required to contain the requisite opt-out provisions.  See *Sandusky*, 863 F.3d at 466-68.  Because the issue of consent is disputed, the Court cannot resolve this issue and thus, summary judgment for both Plaintiff and Defendant are precluded.

### *Plaintiff cannot show injury in fact*

According to Defendant, Plaintiff lacks standing to assert its TCPA claim because it cannot show an injury.  The Court has already determined that Plaintiff has standing under Article III of the Constitution because it alleged sufficient facts to show it suffered a concrete and particularized injury.  Now on summary judgment, Rusty V. Whiteamire testified that Plaintiff suffered injury in the "waste of time, loss of focus, staff time and supplies" in dealing with the allegedly unsolicited fax advertisement.  (Whiteamire depo pg. 64).  This is sufficient evidence of injury that is concrete and particularized to establish Article III standing.

Therefore, for the foregoing reasons, the Court denies both Plaintiff's and Defendant's Motions for Summary Judgment.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  January 26, 2018