**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WHITEAMIRE CLINIC, P.A. INC.,** | ) | **CASE NO.1:16CV00226** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **CARTRIDGE WORLD NORTH** | ) | **OPINION AND ORDER** |
| **AMERICA, LLC., ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court upon the Plaintiff's Motion for Class Certification. (ECF

DKT # 97). For the following reasons, the Court **GRANTS** Plaintiff's Motion for Class

Certification.

**I. Factual Background**

On July 3, 2012, Plaintiff Whiteamire Clinic received a facsimile ("the 7/3 Fax Ad")

advertising Defendant Cartridge World's printers, ink, toner and other products. (ECF DKT

#97, "Exhibit A"). On July 16, 2012, Plaintiff received an identical facsimile ("the 7/6 Fax Ad")

advertising Defendant's printers, ink, toner and other products. (ECF DKT #97, "Exhibit B").

The faxes included marketing inducements such as "30% savings" and "FREE DELIVERY." *Id.*

Plaintiff did not give permission for Defendant to send the 7/3 and 7/16 Fax Ads. (ECF DKT

#1).

The 7/3 Fax Ad and 7/16 Fax Ad were part of a conventional advertising campaign

managed by Thomas McLaughlin, Cartridge World's Marketing Director at that time. (ECF

DKT #64, Deposition of Thomas McLaughlin). MComm Group ("MComm"), a design firm,

created the layout for the advertisement and hired USADATA to compile a list of potential

business customers. *Id.* MComm then hired PIP Printing to transmit the 7/3 and 7/16 Fax Ads

to the customer list purchased from USADATA. (ECF DKT #96, Deposition of Charlie

Calloway). PIP Printing utilized RingCentral, a telecommunication services provider, for the

transmission of the advertisement. *Id.* RingCentral produced PIP Printing's fax log data from

the transmissions via an Excel spreadsheet ("RingCentral 046 Spreadsheet"). (ECF DKT #97,

"Exhibit D" Declaration of Mark Smoot). The RingCentral 046 Spreadsheet data shows PIP

Printing transmitted the 7/3 Fax Ad on July 3, 2012 to 9337 fax numbers, 5623 of which were

successful. (ECF DKT #97, "Exhibit E" Declaration of Mark Smoot). The Spreadsheet also

shows that on July 16, 2012, PIP Printing transmitted the 7/16 Fax Ad to 4639 fax numbers,

2963 of which were successful. *Id.*

On February 1, 2016, Plaintiff, on behalf of itself and a putative class, filed this action for

injunction, statutory and treble damages resulting from violations of the Junk Fax Prevention Act

("JFPA"), 42 U.S.C. § 227. The JFPA makes the sending of unsolicited advertisements via

facsimile unlawful:

It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless . . . the unsolicited advertisement is from a sender with an established business relationship with the recipient . . . and the unsolicited advertisement contains a[n opt-out] notice . . . .

42 U.S.C. § 227(b)(1)(C). As such, a violation occurs when an individual sends this advertisement over fax. *Id.*

The proposed class is defined as: "All subscribers of accounts (or other persons/entities) associated with (1) the fax numbers listed in the RingCentral 046 Spreadsheet (2) successfully sent a fax with 'start time' of July 3, 2012 or July 16, 2012." (ECF DKT #97). Plaintiff seeks to certify a class under Fed. R. Civ. P. 23(b)(3) made up of entities or person who received the 7/3 Fax Ad or the 7/16 Fax Ad.

## II. Law and Analysis

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members*." Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *East Tech Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1997) (internal citations omitted)).

"To be certified, a class must satisfy all four of the Rule 23(a) prerequisites – numerosity, commonality, typicality, and adequate representation – and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)). "The party seeking class certification has the burden to prove the Rule 23 certification

requirements." *Young*, 693 F.3d at 537.

Rule 23 "does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Dukes*, 564 U.S. at 350. Fed. R. Civ. P. 23(a) reads:

> **(a)** Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> **(1)** the class is so numerous that joinder of all members is impracticable;
> **(2)** there are questions of law or fact common to the class;
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> **(4)** the representative parties will fairly and adequately protect the interests of the class.

Before the Court discusses these factors, the Court must first find that the putative class is sufficiently defined. In *Young*, the Sixth Circuit held, "[t]he class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." 693 F.3d at 537-38 (internal citations omitted). Plaintiff's proposed class includes all "subscribers of accounts (or other persons/entities) associated with (1) the fax numbers listed in the RingCentral 046 Spreadsheet (2) successfully sent a fax with a 'start time' of July 3, 2012 or July 16, 2012." Due to the nature of the spreadsheet, the proposed class includes 8586 identifiable persons or entities. The class proposed by Plaintiff is administratively feasible because the parties can easily see whether an individual was sent a fax by checking their fax number against the RingCentral 046 Spreadsheet. Consequently, Plaintiff's putative class is sufficiently defined.

**A. Numerosity**

In the preliminary approval process, the Court considers class size, geographic

distribution of members and the ability of class members to pursue individual litigation. *See*

*Kreiger v. Gast, et al.*, 197 F.R.D. 310, 314 (W.D. Mich. 2000). Although the Court considers

all these factors, the Sixth Circuit has held that a class of forty or more members is sufficient to

meet the numerosity requirement of 23(a). *Id.*; *see also Consolidated Rail Corp. v. Town of*

*Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995). Accordingly, "substantial numbers usually satisfy

the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

Plaintiff's proposed class numbers 8586 identifiable persons or entities, thus meeting the

numerosity requirement. Further, Cartridge World's advertising team targeted these entities or

individuals with advertisements due to their location "within a certain distance of the local

Cartridge World store." *See* Deposition of Charlie Calloway, pp. 41, 43 (ECF DKT #96).

Therefore, the Court finds the numerosity requirement fulfilled.

**B. Commonality**

In determining commonality, the Sixth Circuit looks for "a common issue the resolution

of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th

Cir. 1998). This common issue or question "need only be one question common to the class."

*Id.* Further, commonality can be found if "class members have suffered the same injury."

*Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*,

722 F.3d 838, 852 (6th Cir. 2013). As in *Glazer*, each of the 8586 individuals or entities

identified as a putative class suffered the same injury. The proposed class's claims involve a

common legal theory based on identical JFPA violations. Both the injury, receiving unsolicited

fax advertisements by Defendant, and the damages, are common for the entire potential class.

Further, common questions exist for the entire class, including: May the faxes sent by Defendant be classified as advertisements? Did Defendant obtain express consent or permission to send the faxes? Did previous business relationships exist between Defendant and each member of the proposed class? Were the faxes sent without the statutorily-required opt-out notice? Were Defendant's actions "willful" and "knowing" as defined under the JFPA? Many of these questions have already been answered due to Defendant's failure to respond to the Fifth Set of Discovery Requests served on Defendant on September 13, 2018. These discovery requests included Requests for Admission that Defendant did not have permission to send the faxes and that the faxes were advertisements. Pursuant to Fed. R. Civ. P. Rule 36(a)(3), a failure to respond to Requests for Admission within 30 days after being served results in the request being admitted. Since Defendant did not respond, some of the remaining common questions of law have been deemed answered by Defendant's admissions. However, other common questions of law and fact remain. Further, common legal theories and damages affect all members of the proposed class and fulfill the commonality requirement.

**C. Typicality**

Under Sixth Circuit precedent, "a claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (internal citations omitted). "[P]laintiffs must show that their injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff." *Bacon v. Honda of Am.*

*Mfg., Inc.*, 370 F.3d 565, 572(6th Cir. 2004) (internal citations omitted).

In the present case, each member of the proposed class was sent the same fax. Each member suffered the same damages under the same theory of liability. Lead Plaintiff's claims encompass those of the purported Class and thus, are typical of those of the entire class. The Court finds the typicality requirement met.

### D. Adequacy

Under the adequacy requirement, the Court considers both the adequacy of the representative and the adequacy of counsel. To certify a class, the Court must find the named class representatives adequate under Fed. R. Civ. P. 23(a)(4). Further, the Court must also appoint class counsel and find them adequate under Fed. R. Civ. P. 23(g)(1).

#### 1. Adequacy of Representative

"[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To do so, the class representative must have interests aligned with those of the other class members. Further, there must be no evidence of conflict of interest or collusion between the lead Plaintiff and the proposed class. In *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998), the Sixth Circuit, quoting the Supreme Court in *Amchem Products, Inc.*, 521 U.S. at 625, stated: "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." The Sixth Circuit continued, "[a]ccordingly, . . . there must be an absence of a conflict of interest, and the presence of common interests and injury." *Rutherford*, 137 F.3d at 909.

The Court has not been made aware of any potential conflicts of interest or antagonistic

relationships between Plaintiff and the Proposed Class.  As discussed in the typicality and

commonality sections, the Lead Plaintiff's claims, interests and damages are identical to those of

the Class.

### 2. Adequacy of Counsel

Under Fed. R. Civ. P. 23(g)(1)(A), the Court must consider:

> "**(I)** the work counsel has done in identifying or investigating
> potential claims in the action;
>  **(ii)** counsel's experience in handling class actions . . . and the
> types of claims asserted in the action;
> **(iii)** counsels' knowledge of the applicable law; and
> **(iv)** the resources that counsel will commit to representing the
> class. . . "

when making an assessment as to the adequacy of counsel.

The attorneys representing Plaintiff and the potential class – Matthew Stubbs, George

Jonson, Brian Wanca, Ross Good and Ryan Kelly – have all been designated as class counsel in

previous JFPA claims.  Stubbs and Jonson have previously been appointed class counsel in the

Sixth Circuit and have practiced in both the Northern and Southern Districts of Ohio.  *See*

Declaration of Matthew E. Stubbs (ECF DKT #97 "Exhibit E").  While the firm they previously

worked for, Montgomery, Rennie & Jonson, has since closed its doors, Stubbs and Jonson have

taken their class action experience to a new firm, Montgomery & Jonson.  Further, attorneys

Wanca, Good and Kelly from Wanca & Anderson have similarly performed as counsel for class

JPFA actions and are experienced in this area of law.

Counsel has, as discussed in Plaintiff's Memorandum of Points and Authorities in

Support of Motion for Class Certification (ECF DKT #97), performed more than four hundred

hours of work in prosecuting this matter. All five attorneys have successfully worked on the

present case and have significant experience as counsel for class JFPA actions. For these

reasons, the Court finds adequacy of counsel.

### E. Predominance and Superiority under Rule 23(b)(3)

Having found that Rule 23(a) criteria are met, the Court must next examine whether one

of the Rule 23(b) factors is satisfied. Rule 23(b)(3) states that a class action is maintained if

Rule 23(a) is satisfied and if:

> **(3)** the court finds that the questions of law or fact common to
> class members predominate over any questions affecting only
> individual members, and that a class action is superior to other
> available methods for fairly and efficiently adjudicating the
> controversy. The matters pertinent to these findings include:
>> **(A)** the class members' interest in individually controlling
>> the prosecution or defense of separate actions;
>> **(B)** the extent and nature of any litigation concerning the
>> controversy already begun by or against class members;
>> **(C)** the desirability or undesirability of concentrating the
>> litigation of the claims in the particular forum; and
>> **(D)** the likely difficulties in managing a class action.

### 1. Predominance

The predominance requirement under Rule 23(b)(3) parallels the commonality

requirement, however, the predominance requirement contains a more stringent requirement that

a common issue predominate over any individual issues. In *Beattie*, the court elaborated on the

predominance requirement holding that "issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole, . . . predominate over those issues that are

9

subject only to individualized proof." 511 F.3d at 556. For junk fax class actions, "the main

questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira*

*Holtzman, C.P.A. & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

In the present case, multiple questions of law or fact apply to the class as a whole. For

example, the Court must consider whether the 7/3 Fax Ad and the 7/6 Fax Ad were

advertisements and whether pre-existing business relationships existed between Defendant and

all members of the proposed classes. Regardless of how these remaining legal questions are

answered, the fact that the same answer will apply in the same way to each member of the class

shows that class-wide questions predominate over any individual claims. Further, there was a

common course of conduct by Defendant which resulted in the same injury to every member of

the proposed class. The same damages are requested, under the same theory of law, and are

applicable to the class as a whole without affecting individual parties.

Defendant did offer a "permission defense" in its Answer, claiming that it had either

obtained express consent or sent faxes only to those entities or individuals it had a business

relationship with. (ECF DKT #10). A "permission defense" functions by "set[ting] forth

specific evidence showing a significant percentage of the putative class consented to the

communication at issue before a court can find that issue of individualized consent predominate

over any common questions of law or fact." *Alpha Tech Pet, Inc. v. Lagasse, Inc.*, 2017 U.S.

Dist. LEXIS 182499 *13 (N.D. Ill 2017) (quoting *Brodsky v. Humanadental Ins. Co.*, 269 F.

Supp. 3d 841, 846 (N. D. Ill. 2017)). However, the Sixth Circuit has held class certification may

go forward when a "permission defense" is merely alleged without "offer[ing] any information

or evidence to support that theory. . . . [T]he mere mention of a defense is not enough to defeat

the predominance requirement of Rule 23(b)(3)." *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125-26 (6th Cir. 2016). Further, due to Defendant's failure to respond to the Requests for Admission, Defendant admits it lacked permission to send the 7/3 and 7/16 Fax Ads. Regardless of Defendant's proposed "permission defense," the Court finds that Plaintiff and the proposed class meet the predominance requirement.

### 2. Superiority

The superiority prong of Rule 23(b)(3) requires the Court to consider whether a class action would be superior to other methods for claim adjudication. *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 315 F.R.D. 200, 219 (E.D. Mich. 2016). Class certification is superior when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products Inc.*, 521 U.S. at 615. Plaintiff argues that a class action is superior to 8586 individual actions for the alleged JFPA violations. The Sixth Circuit has generally agreed with Plaintiff, stating, "[t]he denial of a plaintiff class sometimes defeats the case . . . because the stakes are too small and the litigation costs are too high for the individual plaintiff . . . . Such is the case here, where an individual's recovery is limited to a maximum of $1,500." *In re: Sandusky Wellness Ctr., LLC*, 570 Fed. Appx. 437, 437 (6th Cir. 2014).

In *In re Whirlpool*, the Sixth Circuit discussed the issue of small awards weighing in favor of class certification, holding that "[u]se of the class method is warranted particularly

11

because class members are not likely to file individual actions – the cost of litigation would dwarf any potential recovery." 722 F.3d at 861. In the present case, potential damages are between $500 and $1500 per fax per individual. The cost of each individual suit would far outweigh the potential award; damages are too minimal to justify individual suits for each potential plaintiff. Further, holding 8586 separate lawsuits against the same Defendant with the same damage calculations would be far inferior to combining these cases into one class action. Concentrating the litigation in one forum would ensure procedural fairness and efficient adjudication. In terms of time, money and court resources, a class action is superior in deciding these issues and any damages.

Further, due to the statute of limitations, class activity linked to this present case is the only relief for the vast majority of the proposed class. The other members of the proposed class are barred from bringing a suit as the four-year statute of limitations period for the JFPA violation has expired. The only remaining remedy for these individuals would be this suit. Because of the limitations statute and the superiority of a class action, the Court finds the superiority requirement fulfilled.

### III. Conclusion

The Sixth Circuit will uphold a motion for class certification when Plaintiff sufficiently sets forth evidence that: (1) the putative class is sufficiently defined; (2) the proposed class meets the requirements of numerosity, commonality, typicality and adequacy of counsel and representation; and (3) the putative class meets one of the requirements under Rule 23(b), here, predominance and superiority. In the present case, Plaintiff sufficiently set forth evidence to

meet each requirement.  For the above reasons, the Court **GRANTS** Plaintiff's Motion for Class

Certification (ECF DKT #97).

IT IS SO ORDERED.


          s/Christopher A. Boyko
          CHRISTOPHER A. BOYKO
          United States District Judge

DATED: 7/30/2019