IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (AT CLEVELAND)

| | |
|---|---|
| WHITEAMIRE CLINIC, P.A., INC., an Ohio corporation, individually, and as the representative of a class of similarly-situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> CARTRIDGE WORLD NORTH AMERICA, LLC. and JOHN DOES 1-10, <br><br> Defendants. | Case No. 1:16-cv-00226-CAB <br><br> Senior Judge Christopher A. Boyko <br><br> **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** |

In opposing the Motion to Compel Compliance with Subpoenas (ECF No. 120), Respondents Cartridge World USA, LLC ("CW USA") and Blackford Capital Associates II, Inc. ("Blackford Capital") contend this Court has no power to resolve disputes relative to the subpoenas because they "are not Ohio businesses and do not operate within 100 miles of this judicial district." *See* Respondents Joint Brief in Opposition to Whiteamire Clinic, P.A., Inc.'s Motion to Compel Compliance with Subpoenas (hereinafter "Opposition Brief"), p. 1 (ECF No. 123, PageID# 5001). As for the substance of the subpoenas, while acknowledging "there are a handful of requests that could arguably call for the production of documents relating to the assets of the Defendant/Judgment Debtor [referring to CW North America]", Respondents contend they should not have to produce such documents because "(1) Whiteamire Clinic made no showing of any connections between Respondents and the Defendant/Judgment Debtor and (2) the same information is available from the Defendant/Judgment Debtor and its parent company." *See* Opposition Brief, p. 14 (ECF No. 123, PageID# 5015). None of these reasons should dissuade the Court from granting the Motion to Compel Compliance with Subpoenas.

1

### A. Under Both State and Federal Procedures, this Court is the Proper Court to Resolve Issues Pertaining to the Subpoenas.

Respondents argue the subpoenas cannot be enforced because Federal Civil Rule 45(c)(2)(A) requires the place of production of documents to be "within 100 miles of where the person resides, is employed, or regularly transacts business" and "[n]either entity is within 100 miles of the Northern District of Ohio." *See* Opposition Brief, p. 14 (ECF No. 123, PageID# 5015). There are numerous flaws with this argument.

First, both Blackford Capital and CW USA do regularly transact business in the Northern District of Ohio. By its own description, "Blackford is a private equity fund that . . . acquires operating businesses, generally through one or more subsidiaries and/or holding companies." *See* Opposition Brief, p. 3 (ECF No. 123, PageID# 5003); Declaration of Mark Pinner, ¶ 3 (ECF No. 123-1, PageID# 5018). Respondents then describe CW USA as an "indirect subsidiary of Blackford Capital" that took over the "Cartridge World business" formerly conducted by Defendant Cartridge World North America, LLC ("CW North America" or "CWNA") via the License Agreement: "Prior to the date of the License Agreement, the Cartridge World business was operated by CWNA. . . . Pursuant to the License Agreement, CW USA [acquired] the right to operate the Cartridge World business". *See* Declaration of Mark Pinner, ¶¶ 8, 6 (ECF No. 123-1, PageID# 5018). The "Cartridge World business" includes seven Cartridge World locations in Ohio, four of which are in the Columbus area and one of which is in the Akron/Canton area.[1] Thus, from their own descriptions and public statements, CW USA and its parent corporation, Blackford Capital, are regularly transacting business in the Northern District of Ohio by their operation of the Cartridge World business.

---

[1] Cartridge World provides the location of its stores at: https://cartridgeworld.com/store-locator/#listedstore6.

Second, the subpoenas to both Blackford Capital and CW USA sought the production of documents only. The overwhelming majority of courts have held that the 100-mile geographical limitation of Federal Rule 45(c)(2)(A) does not apply to document-only subpoenas:

> The subpoenaed third parties are located in Wilmington, NC; Simi Valley, CA; Orange, CA; Indian Harbour Beach, FL; and Boise, ID. Although the challenged subpoenas seek production of documents at a designated location in San Diego, California, the subpoenas do not require any travel by the third parties. Accordingly, the Court finds that Defendant's challenge to the validity of the subpoenas on the ground that they require compliance beyond the [100-mile] geographical limits specified in FRCP 45 is without merit.

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* 2014 U.S. Dist. LEXIS 98044, *13-15 (S.D. Cal. 2014)(*internal citations omitted); see also Elsom v. Global Life & Accident Ins. Co.,* 2018 U.S. Dist. LEXIS 239125, *5 (D. Oregon 2018)("Rule 45(c)(2)(A)'s 100—mile boundary does not apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents"); *Sec'y of Labor v. Kazu Constr., LLC,* 2017 U.S. Dist. LEXIS 21600, *31 (D. Haw. 2017)("the 100-mile geographical limitation applies only to travel by a subpoenaed person, not to a situation where the subpoenaed records could be mailed or shipped.")(*internal quotation and citation omitted).*

Courts in the Northern District of Ohio have reached the same conclusion:

> . . . respondents argue that they reside in Akron, Ohio and have been required to produce documents to an address in Chicago, Illinois — allegedly a violation of the 100-mile limit in Rule 45(c)(2)(A). But courts generally find that the rule does not apply where documents can be mailed and do not require personal appearance.

*United States v. Brown,* 223 F. Supp.3d 697, 703 (N.D. Ohio 2016); *see also Battle v. Chi. Cycle, Inc.,* 2012 U.S. Dist. LEXIS 161978, *11-12 (N.D. Ohio 2011)("the subpoena commands SSI to 'produce the following documents or information to DeBlasio Law Group, LLC, 2001 Midwest Road, Suite 100, Oak Brook, Illinois, 60523' . . . . There is nothing to suggest that anyone from

3

SSI must personally appear to produce the documents. There is no deposition connected with the subpoena. Clearly, the documents, if produced, could simply be mailed.")

Finally, post-judgment discovery in federal court is unusual in that the rule that authorizes such discovery, Federal Civil Rule 69, explicitly incorporates state court procedures: "Rule 69(a) clearly authorizes postjudgment discovery pursuant to either state or federal discovery rules". *Fuddruckers, Inc. v. KCOB I, L.L.C.*, 31 F.Supp.2d 1274, 1278 (D. Kans. 1998); *see also Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. 400, 402 (E.D. Wis. 1990)("Rule 69(a) then provides that a judgment creditor may obtain discovery and in so doing, may then either use the procedures set forth in the federal rules or those provided by state practice."); *Johnson v. City of Memphis*, 2016 U.S. Dist. LEXIS 109128, *4 (W.D. Tenn. 2016)("Rule 69(a)(2) allows for discovery 'as provided in these rules or by the procedure of the state where the court is located.'"); *FTC v. Trudeau,* 2012 U.S. Dist. LEXIS 160545, *13 (N.D. Ohio 2012)("A judgment creditor is entitled to utilize the full panoply of federal discovery measures provided for under federal and state law to obtain information from parties and non-parties alike")(*internal quotations and citations omitted).*

While state and federal discovery procedures differ in many respects, they are in accord on the point critical to this motion; *i.e.,* the court from which subpoenas are issued has the right to resolve disputes relative to such subpoenas. *See* Ohio R. Civ. Pro 45(A)(2)(b)-(3)(a)("If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued. . . . On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production".) *and JTR Enters., LLC v. An Unknown Quantity of Colombian Emeralds,* 297 F.R.D. 522, 525 (S.D. Fl. 2013)("Together, [Federal Civil] Rules 45(d)(2)(B) and 37(a)(2) direct that motions to compel

compliance with subpoenas for production from non-parties must be filed with the issuing court. In other words, the court issuing a subpoena is responsible for its enforcement and has exclusive jurisdiction to rule on a subpoena issued in that court's name."); *see also Nelson v. Lone Pine Acquisitions, LLC (In re Nelson),* 2020 Bankr. LEXIS 1632, *11 (E.D. Mich. 2020)("Under [Federal Civil] Rule 45(g), the court that issues a subpoena 'may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena.'")

### B. CW USA is Not Only Related to CW North America, It Appears to be the Direct and Immediate Successor to CW North America.

As stated by the U.S. District Court for the Southern District of Ohio, "[t]he scope of post-judgment discovery is very broad and is intended to facilitate the identification of information relevant to the existence or transfer of the judgment debtor's assets." *United States v. Mitchell*, 2010 U.S. Dist. LEXIS 155062, *3 (S.D. Ohio 2010)(*internal quotations and citations omitted*). Moreover, "such discovery is not limited to parties, but may be obtained from any person." *Id.* at *4 (*internal quotations and citations omitted).* As such, "[p]rovided the government [or other judgment creditor] can make some showing of the relationship that exists between the judgment debtor and the third party, the government should be permitted to obtain discovery aimed at uncovering defendants' hidden or concealed assets." *Id.* at *3 (*internal quotations and citations omitted).*

Respondents insist they should not have to produce documents responsive to the subpoenas because "Respondents have no relationship to the judgment debtor" and "CW USA is completely unrelated to CWNA." *See* Opposition Brief, p. 3, 4 (ECF No. 123, PageID# 5003)(*emphasis in original).* These statements are demonstrably false. The only factual information provided by CW USA and Blackford Capital was via the Declaration of Mark Pinner, who described himself as "the Chief Executive Officer of Cartridge World USA, LLC". Declaration of Mark Pinner, ¶ 2 (ECF

5

No. 123-1, PageID# 5018). As stated on his LinkedIn page, Mr. Pinner only became the Chief Executive Officer of CW USA in December of 2019 (when the License Agreement occurred); for the three-plus years before that, he held the same position at CW North America.[2]

Aside from the continuity of management between CW North America and CW USA, CW USA was created for the "sole purpose" of taking over the "Cartridge World business" from CW North America:

> Prior to the date of the License Agreement, the Cartridge World business was operated by CWNA. . . . Blackford formed CW USA for the sole purpose of licensing and operating the Cartridge World business. CW USA had not engaged in any business or operations of any sort prior to December 23, 2019.

*See* Declaration of Mark Pinner, ¶¶ 8, 4 (ECF No. 123-1, PageID# 5018). As Mr. Pinner then explained, "[p]ursuant to the License Agreement, CW USA licensed the right to operate the Cartridge World business from Licensor. On the date of the License Agreement, CW USA paid Licensor $2.6 million as a fee for this license." Declaration of Mark Pinner, ¶ 6 (ECF No. 123-1, PageID# 5019). Additionally, to facilitate the hand-off from CW North America to CW USA, "CW USA assumed certain agreements relating to the Cartridge World business from Cartridge World North America, LLC" for which "CW USA paid CWNA $780,000 on the date of the License Agreement". Declaration of Mark Pinner, ¶ 7 (ECF No. 123-1, PageID# 5019).

From these facts alone, Blackford Capital and CW USA clearly have a relationship to CW North America. With money that was provided by Blackford Capital, CW USA purchased CW North America's assets, assumed CW North America's contractual obligations, and continued CW North America's former business. Under Ohio's doctrine of successor liability, these circumstances may subject CW USA to liability for the debts and obligations of CW North

---

[2] Mr. Pinner's LinkedIn page is available at: https://www.linkedin.com/in/mark-pinner-8418a359.

America:

> The well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation. Equally well recognized are the four exceptions to this general rule. A successor corporation may be held liable when (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Welco Indus., Inc. v. Applied Cos.,* 67 Ohio St.3d 344, 346-347 (Ohio 1993)(*internal quotations and citations omitted).* Moreover, at the time CW USA paid $3,380,000 to acquire CW North America's business, a judgment had already been rendered against CW North America in this case. To date, none of that judgment has been paid, begging the question what CW North America did with this money.[3] As an effort to discover the answer to such questions, the subpoenas are valid post-judgment discovery and should be enforced by this Court.

### C. This Court Should Overrule the Respondents' Boilerplate Objections and Order Compliance with the Subpoenas.

Turning to the substance of the subpoenas, the requested documents largely consist of tax and other financial documents for which there can be no legitimate question as to their relevance or materiality:

> Discovery of tax returns for previous years, particularly when accompanied by an examination of corporate financial records, may well disclose efforts to drain-off or conceal assets and income. The

---

[3] If this money was transferred to the shareholders of CW North America or other company insiders, both the directors of CW North America and its shareholders may be liable for such conduct. *See Star Hardware & Supply Co. v. Toledo Steel Castings Co.,* 90 Ohio St. 171, 171 (Ohio 1914)("The payment of the debts and liabilities of an insolvent corporation is a condition precedent to its distribution of any of the assets to its shareholders. . . . If distribution is made to a shareholder before the corporation's creditors are satisfied, the creditors may follow the corporation's assets into the hands of the shareholder."); *see also City Loan Bus. Serv. Co. v. Miner-Oyer Supply*, 1985 Ohio App. LEXIS 8888, *5-6 (Ohio Ct. App. (5th Dist.) 1985)("The directors of an insolvent corporation hold its property in trust for the benefit of all its creditors, and have no authority to transfer, sell and assign all of the property of the insolvent corporation . . . but must proceed to wind up the affairs of such corporation and apply all of its property and assets to the payment of its debts.")

>tax returns are clearly relevant to the subject matter of OHM's inquiry under Rule 69(a) . . . .

*OHM Resource Recovery,* 1991 U.S. Dist. LEXIS 10297, *6 (N.D. Ind. 1991). Further, Plaintiffs cannot reasonably be expected to furnish definitive proof of fraudulent conveyances or other malfeasance in order to obtain documents from the entities that may have participated in such conduct:

>OHM [the plaintiff/judgment creditor] is clearly entitled to inquire into past financial records and transactions in order to determine the existence of concealed or fraudulently transferred assets. It is not, as IFR maintains, required to come forward with evidence of fraudulent conveyances as a precondition to conducting such an inquiry, nor is it required to demonstrate an inability to execute on its judgment before pursuing discovery under Rule 69(a).

*Id.* at *6.

In this context, the boilerplate objection that CW USA and Blackford Capital repeated in response to every one of the requests for documents in the subpoenas is plainly inadequate:

>The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are . . . insufficient to bar production.

*Thompson v. Reg'l West Med. Ctr.*, 2007 U.S. Dist. LEXIS 98367, at *2 (D. Neb. 2007); *see also Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565 (D. Kan. 1997)("The objecting party has the burden to substantiate its objections. The litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request."); *see also Janko Enters. v. Long John Silver's, Inc.,* 2013 U.S. Dist. LEXIS 135107, at *18 (W.D. Ky. 2013)("Unexplained and unsupported 'boilerplate' objections clearly are improper."); *In re Heparin Prods. Liab. Litig.,* 273 F.R.D. 399, 410-411 (N.D. Ohio 2011)("Baxter's mechanical repetition of the same objections request-by-request was not proper. . . . At the very least, where a party claims burdensomeness, it

must explain why that is so. It should also propose alternatives, if such might be possible, that could enable some degree of production.")

### D. Plaintiffs Have Tried Unsuccessfully to Obtain Documents and other Discovery from CW North America.

There is one additional point worth noting. Respondents claim they should be relieved of the duty to produce documents responsive to the subpoenas because "any documents specifically pertaining to CWNA are actually obtainable directly from CWNA or its parent, CW Australia." *See* Opposition Brief, p. 10 (ECF No. 123, PageID# 5011). As this Court is aware, CW North America stopped participating in this suit after its counsel withdrew in 2018. Nonetheless, Plaintiffs served requests for documents on CW North America similar to the subpoenas; to this point, neither CW North America nor CW Australia, its purported parent corporation[4], have responded to these requests.

Blackford Capital and CW USA cannot credibly claim to be unaware of these circumstances. On the contrary, the same person who served as CW North America's Chief Executive Officer for the three years prior to the License Agreement has served as the CW USA's Chief Executive Officer subsequent to the License Agreement. Likewise, CW North America appears to have become both defunct and insolvent as a result of the License Agreement. CW USA, as a party to the License Agreement and the successor to CW North America's business, was a direct participant in this. Accordingly, CW USA and Blackford Capital should not be relieved of the duty to produce documents responsive to the subpoenas on the phantom possibility that Plaintiffs can simply obtain such documents from CW North America.

---

[4] *See Hunter Douglas, Inc. v. Comfortex Corp.,* 1999 U.S. Dist. LEXIS 101, at *9 (S.D.N.Y. 1999)("If the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes."); *United States v. International Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.")

## CONCLUSION

For all of the foregoing reasons, as well as those reasons stated in the Motion to Compel Compliance with Subpoenas (ECF No. 120), Plaintiff Whiteamire Clinic, P.A., Inc. respectfully requests that this Court overrule Respondents Blackford Capital Associates II, Inc. and Cartridge World USA, LLC's objections to the requests in the subpoenas and order them to provide responsive documents within fourteen days.

Respectfully submitted,

*/s/ Matthew E. Stubbs*
GEORGE D. JONSON
MATTHEW E. STUBBS
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, OH  45202
Phone: (513) 241-4722
Fax:    (513) 768-9227
Email: gjonson@mojolaw.com
           mstubbs@mojolaw.com

ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone: (847) 368-1500
Fax:    (847) 368-1501

*Attorneys for Plaintiff Whiteamire Clinic, P.A., Inc. and the Certified Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Additionally, I certify that the following persons were served with the foregoing via regular mail or email at the following addresses:

Aaron M. Williams
Vorys, Sater, Seymour and Pease, LLC
200 Public Square, Suite 1400
Cleveland, Ohio 44114

Phone: (216) 479-6180
Fax: (216) 479-6060
Email: amwilliams@vorys.com

*Counsel for Respondents Cartridge World USA, LLC
and Blackford Capital Associates II, Inc.*

Cartridge World North America, LLC
3917 Mercy Drive
McHenry, IL 60050

>  */s/ Matthew E. Stubbs*
> MATTHEW E. STUBBS